IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SWINGAWAY SPORTS PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 7949 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ESCALADE, INC., d/b/a Escalade Sports, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff SwingAway Sports Products, Inc. has sued defendant Escalade, Inc. in a four count complaint alleging patent infringement, reverse palming-off in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), violations of the Illinois Deceptive Trade Practices Act, and tortious interference with prospective economic advantage. Defendant has moved to transfer venue under 28 U.S.C. § 1404(a) to the Southern District of Indiana. Because the action has no significant connection to the Northern District of Illinois, defendant's motion is granted.

**FACTS**[1]

Plaintiff SwingAway makes and sells a highly acclaimed innovative and patented baseball and softball hitting training system. Each of SwingAway's products bears the SWINGAWAY® trademark and all incorporate its patented features, including its ball return dampening feature. It was formed in 2008 and has established itself as a leader in the baseball and softball training aids market, with projected sales in 2012 of greater than $1 million. It is a Georgia corporation with its principal place of business in Marietta, Georgia.

---

[1] The facts are taken from plaintiff's complaint and presumed to be true for purposes of this motion.

Defendant Escalade[2] is an Indiana corporation with its principal place of business in Evansville, Indiana. It is in the business of making and selling sports-related equipment and products for a variety of sports under a number of well known brands, including "Goalrilla." It averages over $100 million in annual revenue.

Plaintiff is the assignee of U.S. Patent No. 5,795,250 (the "`250 Patent") entitled Tethered Ball Practice Device. The '205 Patent covers all of plaintiff's baseball and softball training aids. Plaintiff also owns the federally registered SWINGAWAY® trademark.

On June18, 2011, plaintiff's president John Flading was at a trade show at the college world series in Omaha, Nebraska. He was told by an industry-renowned baseball hitting instructor that a SwingAway hitting and fielding aid was on display at another exhibitor's (defendant's) booth. Flading went to defendant's booth and observed a training system identical in all material respects, including the ball return dampening system covered by the '250 Patent, to a SwingAway device. The product was identified as a "Goalrilla Spring Trainer" but was a SwingAway device with minor cosmetic changes. The key parts were actually physically taken from a SwingAway device. On further inspection, Flading discovered that defendant had simply rubbed off the SWINGAWAY® trademark from the exhibited device.

Flading told the personnel at defendant's booth that the Goalrilla Spring Trainer incorporated SwingAway parts, and infringed the `250 Patent. Defendant's personnel showed Flading copies of documents reflecting that the `250 Patent had lapsed on September 19, 2010, for failure to pay routine maintenance fees. Defendant took the position that as a result of that

---

[2]The complaint identifies Escalade Sports as a d/b/a of Escalade, Inc. According to defendant, the correct party is Indian Industries, Inc. which does business as Escalade Sports. Escalade, Inc. is the parent company of Indian Industries, Inc.

2

lapse, it was free to make, use and sell products that read on the claims of the `250 Patent on the basis of intervening rights under 35 U.S.C. § 41(c)(2).

On that same day Flading contacted plaintiff's patent counsel, who filed a petition with the Patent and Trademark Office ("PTO") advising of counsel's inadvertent error, paying the maintenance fee and requesting immediate reinstatement of the `250 Patent. The PTO reinstated the patent that same day.

Defendant filed an action in the Southern District of Indiana seeking a declaratory judgment of non-infringement. Hearing nothing from plaintiff, defendant assumed that plaintiff had acquiesced with respect to its position that it had intervening rights with respect to the `250 Patent and allowed the 120 day service period to expire. One month later, almost five months after the trade show, plaintiff filed the instant action in this district.

## DISCUSSION

"Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)." In re TS Tech USA, Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008). That section provides "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The court may transfer venue when "(1) venue is proper in this district; (2) venue and jurisdiction is proper in the transferee district; (3) the transferee district is more convenient for both parties and witnesses; and (4) transfer would serve the interests of justice." Spread Spectrum Screening, LLC v. Eastman Kodak Co., 2010 WL 3516106 at *3 (N.D. Ill. 2010) (citing Jaramillo v.

3

DineEquity, Inc., 664 F. Supp.2d 908, 913 (N.D. Ill. 2009)). In the instant case, only the third and fourth elements are in dispute.

To determine whether one venue is more convenient than another, courts in this district generally evaluate five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. Spread Spectrum, 2010 WL 3516106 at *3 (citing Amoco Oil Co. v. Mobile Oil Corp., 90 F. Supp.2d 958, 960 (N.D. Ill. 2000).

Generally, the plaintiff's choice of forum is given great weight when the chosen forum is the plaintiff's home forum. Spread Spectrum, 2010 WL 3516106 at *3. When the plaintiff's forum is not its home forum and the chosen forum lacks significant contacts with the cause of action, the plaintiff's choice becomes merely one of several factors and is entitled to little weight. Id.

In the instant case, the Northern District of Illinois is not plaintiff's home forum (Georgia), not defendant's home forum, and has almost no connection to the cause of action. It is available as a forum only because defendant is subject to personal jurisdiction here as a result of sales of its products in Illinois. Therefore, plaintiff's choice is entitled to little weight and is not a significant factor in determining whether the transferee district is more convenient.

The second factor, the situs of material events, favors transfer. "[I]n patent cases the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, and its documents, rather than those of the plaintiff." Cooper Bauck Corp. v. Dolby Labs., Inc., 2006 WL 1735282 at *4 (N.D. Ill. June 29, 2006).

In the instant case, defendant is located in Evansville, Indiana, and all of its business decisions, including the design, manufacture and sales of the alleged infringing products occurred there. Nothing occurred in the Northern District of Illinois except perhaps some sales of defendant's product, but defendant's products are sold nationwide and such sales are insufficient to establish a substantial connection to the instant forum. Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc., 55 F. Supp.2d 871, 874 (N.D. Ill. 1999).

The third convenience factor, ease of access to sources of proof also favors transfer. As the Federal Circuit has noted, in patent cases "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009). All of defendant's relevant documentary evidence is located in Indiana. Plaintiff's evidence, to the extent relevant, is located in Georgia. Nothing is in Illinois. Therefore, relative ease of access to proof favors transfer.

The fourth and fifth factors, convenience of the parties and witnesses, also favor transfer. As noted, all of defendant's witnesses are located in Indiana. All of plaintiff's employee witnesses are in Georgia. None are in Illinois. Plaintiff has identified a number of non-party witnesses, but none are located in this district. Essentially, plaintiff argues that it chose Chicago as a forum because it is "a reasonable compromised location for litigation" between the two companies because it offers more and less expensive travel options than Evansville, Indiana, making it an easier and more economical forum for all principals and witnesses including third parties. This court has already rejected this argument once, noting that "if this were a persuasive factor, the price of airline tickets would determine the most convenient venue for all litigation, a

5

result this court is hesitant to reach." Spread Spectrum, 2010 WL 3516106 at *5.  Indeed, if this court accepted plaintiff's argument, this district, because of its location and nearby airports, would likely be inundated with lawsuits that have no significant connection to the district.

The only connection the instant action has to this district is that plaintiff's attorneys are located here.  That factor is entitled to little weight, and certainly not enough to overcome the balance in favor of transfer.  Accordingly, the court concludes that the Southern District of Indiana, is a more convenient forum than the Northern District of Illinois.

Transfer must also be in the interest of justice.  28 U.S.C. § 1404(a).  The likelihood of a speedy trial, possibility of consolidation, the court's familiarity with particular law are all factors that this court considers when evaluating whether transfer would be in the interest of justice. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986).  Additionally, the relationship of the community to the litigation and the desirability of resolving disputes in their location are other factors that determine the interest of justice.  Spread Spectrum, 2010 WL 3516106 at *5.

Plaintiff argues that this court has substantially more experience dealing with patent issues than does the Southern District of Indiana.  It reaches this conclusion by noting that between 2000 and 2010 this district resolved 1,200 patent cases as opposed to 152 by the Southern District of Indiana.  As defendant points out, however, the average number of patent cases handled per judge is fairly comparable.  And every case, particularly a patent case, is unique, meaning the shear number of cases filed in a particular district says little about the expertise of a court to handle certain issues.

Additionally, this district has no relationship to the litigation, while defendant is located in the Southern District of Indiana, giving that district significant local interest. The Federal Circuit has often noted that "if there are significant connections between a particular venue and the events that give rise to a suit, this factor should be weighed in that venue's favor." In re Acer American Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010) (citing In re Hoffman-La Roche, Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

Plaintiff has brought two claims under Illinois law, and this court's familiarity with that law weights against transfer. Just as this court has on a number of occasions, however, had to interpret Indiana law, the Indiana district court is fully capable of interpreting Illinois law. Therefore, the court concludes that despite the two Illinois state law claims, the interests of justice favors transfer.

## CONCLUSION

For the reasons discussed above, defendant's motion to transfer venue to the Southern District of Indiana, Evansville Division is granted.

**ENTER:** **April 23, 2012**

_____
**Robert W. Gettleman**
**United States District Judge**